Filed 11/20/15  P. v. Lopez CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JOSE FERNANDO LOPEZ et al.,<br><br>    Defendants and Appellants. | D068685<br><br><br>(Super. Ct. No. FVI1401880) |

APPEALS from judgments of the Superior Court of San Bernardino County, John M. Tomberlin, Judge.  Affirmed in part; reversed in part and remanded.

John L. Dodd, under appointment by the Court of Appeal, for Defendant and Appellant Jose Fernando Lopez.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant Kevin Ramirez.

Jared G. Coleman, under appointment by the Court of Appeal, for Defendant and Appellant Rafael Lopez.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted brothers Jose Fernando Lopez and Rafael Lopez[1] of committing a lewd act upon a child (Pen. Code, § 288, subd. (a).)[2] Codefendant Kevin Ramirez pleaded no contest to oral copulation with a minor (§ 288a, subd. (b)(1)). The trial court sentenced each defendant to three years in state prison. Jose and Rafael were ordered to pay $1,410 in restitution for victim relocation.

On appeal, each defendant raises claims of error. Jose asserts the court erred by admitting his extrajudicial statements because there was no evidence of the corpus delicti of the lewd act aside from those statements. Jose also argues there was no basis for the restitution order imposed against him and Rafael. Rafael argues the trial court erred by sentencing him as an adult and by requiring that he surrender his driver's license under Vehicle Code section 13350. Ramirez asserts he should be permitted to withdraw his no contest plea because he detrimentally relied on case law concerning sex offender registration that has since been abrogated. We agree with Jose that restitution for the victim's relocation expense was not properly imposed. We reject all other contentions on appeal.

---

[1]    To avoid confusion, we will use first names for individuals who share the same last name.

[2]    Further statutory references are to the Penal Code unless otherwise noted.

*Prosecution Evidence*

On January 3, 2014, in the late afternoon, Jose, who was 21 years old at the time, and his brothers Rafael, age 16, and Oscar Lopez,[3] age 17, and their cousin Ramirez, age 16, went to the Victor Valley mall after completing work on a house owned by their family. At the mall, they met 12-year-old J. and 14-year-old S. After hanging out for a short time, the group left the mall. Jose drove them to a liquor store where he purchased alcohol, and then to the house where the boys had been working. S. testified at trial that she did not want to go with the boys, but that J. wanted to go with them and she did not want J. to go alone. When the group arrived at the house, one of the boys put on a movie. The boys offered S. and J. alcohol that Jose had purchased. Both girls drank some alcohol and J. smoked marijuana from a pipe that was also provided by the boys.

1. *Evidence concerning J.*

At trial, J. testified that shortly after they arrived at the house she went into a bedroom with Oscar, they had sex, and Oscar ejaculated on her stomach. She denied that the first person she had sex with that day was Jose. To rebut this testimony, the prosecution called the investigating detective, Paul Bader, to the stand. Bader testified that at the preliminary hearing J. stated that the first person she had sexual intercourse with was the oldest boy who drove them to the house, and that J. had "picked out Jose" as

---

3      Oscar was not charged with any crime.

one of the perpetrators by identifying him based on an article of clothing. Bader believed that J. incorrectly thought Jose's name was Oscar.

J. next testified that after the first sexual encounter, Ramirez entered the room she was in and they also had sex. J. could not recall if Ramirez ejaculated. After Ramirez left the room, J. and S. met in a bathroom and J. told S. she had sex. J. testified that during this interaction she and S. were having fun and laughing about what was going on. After the encounter with S. in the bathroom, J. testified she went back into the bedroom and had sex with Rafael.

J. told the nurse that examined her two days after the event that she had sex with three boys, but she could only remember the name of one of the boys, Oscar. She remembered "Kevin" as the name of the boy she did not have any sexual contact with. Deputy Sheriff Osvaldo Pelayes testified he prepared photo lineups of the defendants and Oscar. Four days after the crime, Pelayes interviewed J. and showed her the lineups. J. identified Oscar and Ramirez as the boys she had sex with, but she did not identify Jose.

Bader interviewed Jose shortly after the incident and a tape recording of the interview was played for the jury. During the interview Jose admitted J. had given him a lap dance and that he ejaculated in his pants during this encounter. Jose also told the nurse who examined him that the last time he had sex was January 3, 2014, around the same time of day that he was with J. and S.

2. *Evidence concerning S.*

After J. and Jose left the living room where the group was watching a movie, Rafael asked S. to go into a bedroom alone with him. S. testified that once they were in

4

the room Rafael asked her to have sex with him and tried to pull her shorts down. She repeatedly told him she did not want to have sex, but he persisted. S. did not physically resist because she was afraid Rafael would hurt her more.

After Rafael had sexual intercourse with S., he left the room and Ramirez entered. S. testified that Ramirez also forced himself on her after she told him she did not want to have sex. S. told Ramirez no and tried to kick him off of her during the act. When S. was asked to explain why she did not express distress to J. when they met in the bathroom, S. stated she was afraid the boys would become violent. S. testified that she had her phone with her but did not call for help because she was afraid.

After the encounter with Ramirez, S. went back into the living room. She testified that Jose picked her up and tried to carry her back into a bedroom, but she fought against him. The other boys pushed S. and Jose into the room against S.'s will. Once S. and Jose were in the bedroom, however, S. told Jose that her sister and uncle were trying to reach her and that she needed to leave. Jose relented and the girls were driven back to the mall.

That night S. attempted to commit suicide by overdosing on Tylenol and as a result was hospitalized for several days. She testified that she texted her boyfriend around the time she overdosed and told him she had been raped. She also testified she tried to kill herself because of the alleged rape.

3. *DNA evidence*

A criminologist with the San Bernardino County Sheriff's Department's forensic biology unit performed a DNA analysis of semen found on J.'s underwear and DNA specimens collected from Oscar, Jose, Rafael and Ramirez. The testing concluded that

5

the major contributor to the semen found on J.'s underwear was Oscar, and that Rafael was a possible contributor. Jose and Ramirez were excluded as the source of DNA. DNA testing conducted on semen lifted from S.'s skin indicated Ramirez was the major contributor and Rafael was a possible contributor. The testing from S. excluded Oscar and Jose.

B

*Defense Evidence*

Ramirez testified in his own defense. He stated after Rafael left the bedroom that S. was in, he entered and asked S. if she would hook up with him. Ramirez testified that S. was concerned with whether Rafael would mind. Ramirez told her Rafael would not mind and the two engaged in sexual intercourse. Ramirez testified that S. removed her own clothes, that he lost his erection at one point and that S. willingly gave him oral sex and then they resumed intercourse for another 15 minutes. Ramirez said S. played music on her phone's speaker during the events and that she was holding her phone throughout.

Ramirez also testified that after he and S. had consensual sex, they exchanged phone numbers and made plans to see each other again. Ramirez said S. called him the next day to see if he could help her retrieve a sweater she left at the house. Ramirez stated that S. never told him "no" and he denied using any physical force. Ramirez denied engaging in any sexual act with J.

6

## C

### *Jury Verdicts, Plea and Sentencing*

At the conclusion of the trial, the jury found Rafael guilty of committing a lewd act upon a child (§ 288, subd. (a)) and found not true that he committed the offense against more than one victim. The jury acquitted Rafael of forcible rape (§ 261, subd. (a)(2)). The jury found Jose guilty of committing a lewd act upon a child (§ 288, subd. (a)), but was unable to reach a verdict on the remaining count against him for molesting a child (§ 647.6, subd. (a)(1)). The jury also could not reach a verdict on any of the allegations against Ramirez (forcible rape of a child over 14 years old (§ 261, subd. (a)(2)), forcible sodomy of a child over 14 (§ 286, subd. (c)(2)(C)), and committing a lewd act upon a child (§ 288, subd. (a))). Rather than face retrial, Ramirez pleaded no contest to an added charge of oral copulation with a minor (§ 288a, subd. (b)(1)) and on the People's motion the court dismissed the three counts initially brought against him.

At the prosecution's request, the court ordered the probation department to prepare a written social study and recommendation addressing Rafael's and Ramirez's fitness for juvenile sentencing. Based on the circumstances and gravity of the offenses, the probation officer's report concluded Rafael and Ramirez were unfit to be sentenced as juveniles. The trial court agreed and granted the prosecution's request that Rafael and Ramirez be sentenced as adults. The court sentenced each defendant to three years in state prison. The court also ordered Jose and Rafael to pay $1,410 for relocation expenses submitted by J.'s family to the Victim Restitution Unit of the San Bernardino County Probation Department.

DISCUSSION

I

Jose contends his conviction under section 288, subdivision (a) must be reversed because the prosecution "failed to establish the corpus delicti of the offense–i.e., that the offense occurred–independent of Lopez' extrajudicial statements." He claims his own statements to Detective Bader admitting J. gave him a lap dance and that he ejaculated during the interaction were the only evidence supporting his conviction. Jose points to J.'s trial testimony describing three sexual acts perpetrated by Oscar, Rafael and Kevin and denying any sexual contact with Jose, as well as the DNA evidence obtained from J.'s underwear that excluded him. The Attorney General responds that there was "overwhelming evidence that at least three individuals committed a lewd act upon J." and this evidence satisfied the corpus delicti rule. The Attorney General also asserts the rule did not require the prosecution to prove the *specific* act that Jose described in his interview with Bader.

A

"[T]he prosecution must prove the corpus delicti, or the body of the crime itself--i.e., the fact of injury, loss, or harm, and the existence of a criminal agency as its cause" without relying exclusively on the statements of the defendant. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1168-1169 (*Alvarez*).) This requirement ensures a defendant is not convicted of a crime that did not occur. (*Id*. at p. 1169.) Proof of the corpus of a crime may be made by circumstantial evidence and need not amount to proof beyond a reasonable doubt. (*Id*. at p. 1171.) "Rather, the amount of independent proof required is

8

'quite small,' ' "slight," ' or ' "minimal," ' amounting only to a prima facie showing permitting a reasonable inference a crime was committed." (*People v. Tompkins* (2010) 185 Cal.App.4th 1253, 1259.)

"The inference need not be 'the only, or even the most compelling, one . . . [but need only be] a *reasonable* one . . . .' " (*People v. Jones* (1998) 17 Cal.4th 279, 301-302 (*Jones*).) " '[T]he foundation may be laid by the introduction of evidence which creates a reasonable inference that the [harm] could have been caused by a criminal agency [citation], even in the presence of an equally plausible noncriminal explanation of the event.' " (*People v. Ochoa* (1998) 19 Cal.4th 353, 405.) Once the prosecutor establishes the corpus delicti of the crime, the defendant's extrajudicial statements may be considered for their full value. (*Alvarez, supra,* 27 Cal.4th at p. 1171.)

B

The low bar of the corpus delicti rule was satisfied in this case. As the Attorney General asserts, the rule did not require the prosecution "to establish the *specific act to which Lopez confessed* with evidence independent of Lopez' extrajudicial statements." Rather, the prosecution was required only to establish "a slight or prima facie showing of some injury, loss or harm, and that a criminal agency was involved." (*Jones, supra*, 17 Cal.4th at p. 303.) Further, "the corpus delicti rule does not require independent proof that the defendant is the perpetrator of the crime." (*People v. Ledesma* (2006) 39 Cal.4th 641, 721; see also *People v. Armitage* (1987) 194 Cal.App.3d 405, 422 ["[I]ndependent of the accused's extrajudicial confessions or admissions the People must introduce

9

evidence that a crime was committed by someone."  "It is not necessary to show that the defendant was the actor."].)

A violation of section 288, subdivision (a) occurs when the defendant "willfully and lewdly commits any lewd or lascivious act, . . . upon or with the body, or any part or member thereof, of a child who is under the age of 14 years, with the intent of arousing, appealing to, or gratifying the lust, passions, or sexual desires of that person or the child . . . ."  The statute does not require any particular form of physical contact.  (*People v. Martinez* (1995) 11 Cal.4th 434, 438.)  Sufficient evidence, aside from Jose's statements to Bader, established the corpus delicti of a violation of this statute.  First, Bader testified that at the preliminary hearing J. identified the first person she had sexual intercourse with as the oldest of the boys and the one who drove the car from the mall to the house.  It was undisputed that Jose fit this description.  Second, the nurse who examined J. testified J. identified four assailants and remembered the names of two of the four as Oscar and Kevin.  The nurse stated J. told her she had sexual contact with three of the four perpetrators and identified the one she did not have sexual contact with as Kevin, leaving Jose as one of the three people J. had intercourse with.

As discussed, this evidence was not required to mirror Jose's confession or even precisely identify Jose as the perpetrator to satisfy the corpus delicti rule.  (See *Jones, supra*, 17 Cal.4th at p. 303 ["[W]e have never interpreted the corpus delicti rule so strictly that independent evidence of every physical act constituting an element of an offense is necessary."].)  Rather, all that was required was some evidence that the crime

10

alleged occurred. The testimony of Bader and the nurse who examined J. met this minimal requirement.

Jose's reliance on the evidence which tended to exonerate him (J.'s trial testimony that she did not have sexual contact with him and the DNA testing excluding him as a match) for purposes of the corpus delicti rule is misplaced. This evidence did not negate the existence of other evidence from which a violation of section 288, subdivision (a) could be inferred and which satisfied the corpus delicti rule for purposes of the jury's consideration of Jose's statements in his interview with Bader. (See *Jones, supra*, 17 Cal.4th at p. 301.) In sum, sufficient evidence corroborated Jose's extrajudicial statements for purposes of the corpus delicti rule.

## II

Jose next contends the court's order finding Jose and Rafael jointly liable for $1,410 in restitution for relocation costs for J.'s family was not authorized by the restitution statute. Jose asserts restitution was improperly ordered because (1) the statute only allows recovery for adult victims, not a minor like J., (2) relocation costs are for a victim to move away from where the perpetrator of the crime lives and J. moved closer to him and (3) the expenses were not "verified by law enforcement [as] necessary for the personal safety of the victim or by a mental health treatment provider [as] necessary for the emotional well-being of the victim." (§ 1202.4, subd. (f)(3)(I).)

## A

The restitution statute at issue, section 1202.4, provides that it is "the intent of the Legislature that a victim of crime who incurs an economic loss as a result of the

11

commission of a crime shall receive restitution directly from a defendant convicted of that crime." (§ 1202.4, subd. (a)(1).) The law requires the court to order the defendant to pay, "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, . . . restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." (*Id.*, subd. (f).)

Section 1202.4, subdivision (f) enumerates expenses for which restitution is authorized, and includes "[e]xpenses incurred by an adult victim in relocating away from the defendant, including, but not limited to, deposits for utilities and telephone service, deposits for rental housing, temporary lodging and food expenses, clothing, and personal items. Expenses incurred pursuant to this section shall be verified by law enforcement to be necessary for the personal safety of the victim or by a mental health treatment provider to be necessary for the emotional well-being of the victim." (*Id.*, subd. (f)(3)(I).) The statute further provides that "[i]f, as a result of the defendant's conduct, the Restitution Fund has provided assistance to or on behalf of a victim or derivative victim . . . , the amount of assistance provided shall be presumed to be a direct result of the defendant's criminal conduct and shall be included in the amount of the restitution ordered." (*Id.*, subd. (f)(4)(A).)

"[A] prima facie case for restitution is made by the People based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss. [Citations.] 'Once the victim has . . . made a prima facie showing of his or her loss, the burden shifts to the defendant to demonstrate that the amount of the loss is other than

12

that claimed by the victim. [Citations.]' " (*People v. Millard* (2009) 175 Cal.App.4th 7, 26.) " 'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " [Citations.]' [Citation.] However, a restitution order 'resting upon a " 'demonstrable error of law' " constitutes an abuse of the court's discretion.' " (*Ibid.*)

B

Reversal of the restitution order against Jose and Rafael for J.'s relocation expenses is warranted in this case. The prosecutor did not present sufficient evidence of a prima facie case for relocation restitution under section 1202.4, subdivision (f)(3)(I). Before the sentencing hearing, the probation department submitted to the court a "supplemental restitution information for sentencing" stating that a claim had been submitted to the Victim Restitution Unit in the amount of $1,410 for relocation for J. The document noted "zero bills" for expenses had been "submitted to date" and did not indicate whether the claims were approved or paid by the Victim Compensation Board.

At the sentencing hearing, Jose's counsel objected to the restitution fine stating that J.'s family had relocated to Orange County, "where they are closer to the defendants," and it did not make sense for Jose and Rafael to pay those expenses. In response, the trial court stated "This is the Victim Compensation Board order. It's already been paid by the Victim Compensation Board. They recognized [it] when they paid it. Whose fault is it?" The evidence before the court, however, did not indicate if

13

the claim had been paid by the Victim Compensation Board, only that it had been submitted. The court's order was based on an erroneous assumption under section 1202.4, subdivision (f)(4)(A) that the expenses were paid to the victim as "a direct result of the defendant's criminal conduct." There was no evidence in the record establishing the basis for the amount of restitution requested by J.'s family and, therefore, the restitution ordered constituted an abuse of the trial court's discretion. The restitution order is reversed and remanded for further proceedings regarding relocation expenses incurred by J.

## III

Rafael contends the trial court's determination that he was unfit to be sentenced as a juvenile was an abuse of discretion. Ramirez joins in this argument. They assert the trial court failed to provide an adequate statement of reasons for its fitness determination and, even if the statement was adequate, insufficient evidence supports the determination.

## A

There is no dispute that because Rafael and Ramirez were charged with forcible rape under Welfare and Institutions Code section 707, subdivision (b), they were properly tried in criminal court and not under juvenile court law. Under Welfare and Institutions Code section 707, subdivision (b), a minor who is 16 years of age or older at the time he is alleged to have committed one of the crimes enumerated in the statute is presumed unfit to be dealt with in juvenile court. In such cases, the district attorney may file an accusatory pleading directly in criminal court without a judicial determination of unfitness. (*Manduley v. Superior Court* (2002) 27 Cal.4th 537, 548.)

14

After trial, the focus shifts to the offenses for which the minor is convicted. Under section 1170.17, subdivision (a), if the minor was properly tried in criminal court, a conviction in that court subjects the minor "to the same sentence as an adult convicted of the identical offense," except in the circumstances specified in subdivisions (b) and (c) of the statute. One of these exceptions is the circumstance presented here: a minor defendant who is convicted, not of the offenses that brought him within the jurisdiction of the criminal court at the outset of the case, but of an offense which "in combination with the person's age at the time the offense was committed, makes the person eligible for transfer to a court of criminal jurisdiction, pursuant to a rebuttable presumption that the person is a fit and proper subject to be dealt with under the juvenile court law . . . ." (§ 1170.17, subd. (c).)

In this circumstance, a rebuttable presumption arises that the minor is fit and proper for disposition under juvenile court law. (§ 1170.17, subds. (a) & (c).) Just as in a case where a minor is charged with an offense that makes him presumptively eligible for treatment under juvenile court law, the prosecution may overcome the presumption by prevailing on a motion seeking a determination the minor is unfit for sentencing by a juvenile court. (*Ibid.*) Before this determination, the statute requires the court, also on the prosecution's motion, to first order "the probation department to prepare a written social study and recommendation concerning" the defendant's fitness for sentencing under juvenile court law and next conduct a fitness hearing or remand the matter to the juvenile court for that determination. (*Id.*, subd. (c)(2).)

15

Like the Welfare and Institutions Code provisions that govern fitness determinations at the start of a case, Penal Code section 1170.17 provides that the minor "shall be subject to a juvenile disposition under the juvenile court law unless the district attorney demonstrates, by a preponderance of the evidence, that the person is not a fit and proper subject to be dealt with under the juvenile court law, based upon" one or more of five sentencing criteria. (Pen. Code, § 1170.17, subd. (b)(2) and (c).) Those criteria are: "(A) The degree of criminal sophistication exhibited by the person. [¶] (B) Whether the person can be rehabilitated prior to the expiration of the juvenile court's jurisdiction. [¶] (C) The person's previous delinquent history. [¶] (D) Success of previous attempts of the juvenile court to rehabilitate the person. [And] [¶] (E) [t]he circumstances and gravity of the offense for which the person has been convicted." (*Id.*, subd. (b)(2).)

This court reviews the court's unfitness determination for abuse of discretion. (*People v. Superior Court (Jones)* (1998) 18 Cal.4th 667, 680.) Factual findings related to the five criteria that form the basis for the fitness determination are reviewed for substantial evidence. (*Ibid.*) If the court's fitness determination rests on findings unsupported by the evidence, that determination "is necessarily an abuse of discretion." (*Id.* at p. 681.)

B

After trial and Ramirez's no contest plea, the trial court granted the prosecution's motions under section 1170.17, subdivision (c)(2) requesting the probation department prepare written social studies and recommendations regarding Rafael's and Ramirez's fitness for juvenile court. The probation officer's report concluded neither minor was fit

16

for sentencing in juvenile court under the fifth factor—the circumstances and gravity of their offenses.  Following the report, the district attorney filed motions seeking to have Rafael and Ramirez sentenced as adults.  The minors opposed the motions at the fitness hearing, arguing that the probation department's report was biased because it was based on testimony from S. that the jury had rejected, and that Rafael and Ramirez fairly believed J. to be a high school student and not a 12 year old.  The court rejected defense counsel's arguments and adopted the probation department's recommendations, finding Rafael and Ramirez were unfit for disposition in juvenile court.

C

Rafael and Ramirez contend their due process rights were violated because the trial court failed to address each of the five fitness criteria set forth in section 1170.17, subdivision (b)(2), relying instead on just one criteria that the probation department found made each minor unfit for disposition in the juvenile court.  The Attorney General responds that the court could properly base its fitness determination on one of the five factors and, therefore, Rafael and Ramirez were appropriately sentenced in criminal court.  We agree.

In support of the proposition that the court was required to "make findings on each" of the fitness criteria in the five-factored test, Rafael cites *People v. Superior Court (Zaharias M.)* (1993) 21 Cal.App.4th 302 (*Zaharias M.*) and *People v. Superior Court (Robert L.)* (1989) 213 Cal.App.3d 54 (*Robert L.*).  In these cases, the minors were presumptively unfit to be tried in juvenile court.  (*Zaharias M.*, at p. 304; *Robert L.*, at p. 56.)  After fitness hearings, the trial courts found the minors overcame the presumption

17

and were fit for trial in juvenile court. (*Zaharias M.*, at p. 305; *Robert L.*, at p. 58.) In each case, the People challenged the ruling by writ petition to the Court of Appeal. The Courts of Appeal reversed and remanded in both cases, concluding that the courts were mandated by Welfare and Institutions Code section 707, subdivision (c) to address each of the five fitness criteria before adjudicating the minors fit for juvenile court and had failed to adequately do so. (*Zaharias M.*, at p. 306; *Robert L.*, at pp. 60-61.)

Here, however, the trial court determined the district attorney had shown by a preponderance of the evidence that Rafael and Ramirez were unfit for disposition in juvenile court. Unlike the determinations of *fitness* for treatment in juvenile court made in *Zaharias M.* and *Robert L.*, a finding of *unfitness* may properly be based on just one of the five sentencing criteria. (See *Jesus G. v. Superior Court* (1977) 72 Cal.App.3d 219, 223 (*Jesus G.*) ["the gravity of the offense charged may be considered alone" to "make prosecution in an adult court the proper disposition"]; and Welf. & Inst. Code, § 707, subd. (a)(1) ["A determination that the minor is not a fit and proper subject to be dealt with under the juvenile court law may be based on any one or a combination of the factors set forth above, which shall be recited in the order of unfitness." ].) It was not, therefore, an abuse of the court's discretion to find Rafael and Ramirez unfit for sentencing in juvenile court solely because of the gravity of and circumstances surrounding the offenses for which they were convicted.

D

Our conclusion that the court properly based its determination on just one of the fitness criteria does not end the discussion. The court was also required to provide a

18

sufficiently specific statement of the reasons for its unfitness determination to permit meaningful appellate review. (*Kent v. United States* (1966) 383 U.S. 541, 561; *People v. Browning* (1975) 45 Cal.App.3d 125, 137-138; *Robert L., supra*, 213 Cal.App.3d at p. 61.) This requirement did not, however, necessitate formal or conventional findings of fact to satisfy the due process concerns Rafael and Ramirez raise. (See *Kent,* at p. 561 [holding a juvenile fitness provision similar to California's does not require a formal statement or conventional findings of fact, only a statement "sufficient to demonstrate . . . that the question has received the careful consideration" and "the basis for the order with sufficient specificity to permit meaningful review"].)

At the fitness hearing the trial court stated it had reviewed the prosecution's motions under section 1170.17, subdivision (c) and the probation officer's reports recommending the court find the defendants not fit for sentencing in juvenile court. In response to defense counsel's assertion that the probation officer's report and recommendation were unfounded in light of the evidence presented at trial, the court explained it did not agree with the defense's characterization of the report. Specifically, after defense counsel asserted that the probation officer's report was biased because it was based more heavily on S.'s statements that the defendants forcibly raped her and not J.'s statements concerning her own voluntary sexual acts, the court noted that interpretation was "not consistent with [its] opinion as to what happened and what's been proved." In addressing the gravity of the crimes and concluding Rafael and Ramirez were unfit for sentencing as juveniles, the court pointed to S.'s attempted suicide shortly after her encounter with the defendants. The court also stated its own observance of the victims

19

led it to reject defense counsel's argument that the girls appeared older than their ages and, therefore, the crimes were not as grave as the probation report made them out to be.

Further, even if the trial court's explanation of its fitness determination could be construed as inadequate, any error in this case was harmless beyond a reasonable doubt. The record before the trial court contained sufficient evidence to support its findings that Rafael and Ramirez were unfit to be sentenced as juveniles. (See *People v. Chi Ko Wong* (1976) 18 Cal.3d 698, 722-723 ["[T]he failure to make a statement of reasons for denying juvenile court retention" is harmless where the evidence supports "the probation officer's recommendation and the finding of the juvenile court referee" that the defendant was unfit.].) Rafael, Jose and Ramirez, together, brought 14-year-old S. and 12-year-old J. to a vacant house, offered them alcohol and drugs, and each engaged in successive sexual acts with one or both of the girls.

Rafael and Ramirez, in essence, ask this court to reweigh the evidence that was before the trial court and conclude they were fit for treatment as juveniles. This request misapprehends the role of this court. (See *People v. Nelson* (2011) 51 Cal.4th 198, 210 [" ' "[I]f the circumstances reasonably justify the [a] finding[], the judgment may not be reversed simply because the circumstances might also reasonably be reconciled with a contrary finding." [Citation.] We do not reweigh evidence or reevaluate a witness's credibility.' "].) Further, unlike the case appellants rely on, *Jesus G.*, which reviewed the trial court's finding that the minor was unfit for juvenile proceedings before trial (and after a referee deemed the minor fit), the fitness hearing in this case occurred after trial. Here, the court had the entire body of evidence presented at trial to draw from and, as

Rafael concedes, the court was required to consider this whole picture and all of the evidence that might bear on the gravity and circumstances of the offense. (*People v. Superior Court (Jones), supra*, 18 Cal.4th at pp. 683-684.)

We also reject Rafael's contention that the court failed to adequately ascertain his individual conduct, and instead improperly viewed all the perpetrators as one unit. The circumstances and gravity of the offenses Rafael and Ramirez were convicted of were the same and, therefore, applied to both. As stated, the defendants acted together to bring young girls they met that day to a house with no supervision, offered them alcohol and drugs, and then proceeded to have sexual intercourse with one or both of the victims. The evidence before the trial court supports its finding that Rafael and Ramirez committed the crimes they were convicted of in a manner that took advantage of the age and vulnerability of their young victims. This finding in turn amply supports the court's determination that Rafael and Ramirez were not fit for disposition of their convictions in juvenile court.

IV

Rafael next asserts the trial court erred by ordering revocation of his driver's license under Vehicle Code section 13350.[4] The Attorney General contends that because Rafael failed to raise an objection to the order in the trial court, the claimed error was

---

4    This provision states in relevant part: "The department [of motor vehicles] immediately shall revoke the privilege of a person to drive a motor vehicle upon receipt of a duly certified abstract of the record of a court showing that the person has been convicted of any of the following crimes or offenses: [¶] (2) A felony in the commission of which a motor vehicle is used . . . ." (Veh. Code, § 13350, subd. (a)(2).)

forfeited.  Rafael responds that the error was an unauthorized sentence that may be corrected even when raised for the first time on appeal.  Further, he argues the order resulted from the trial court's incorrect interpretation of the statute and urges de novo review by this court.

"[O]nly 'claims properly raised and preserved by the parties are reviewable on appeal.' " (*People v. Smith* (2001) 24 Cal.4th 849, 852 (*Smith*).)  This waiver rule was adopted " 'to reduce the number of errors committed in the first instance' [citation], and 'the number of costly appeals brought on that basis.' " (*Ibid.*)  The rule is applied in the sentencing context "to claims of error asserted by both the People and the defendant. [Citation.]  Thus, all 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' raised for the first time on appeal are not subject to review." (*Ibid.*)

A narrow exception to the waiver rule exists for " ' "unauthorized sentences" or sentences entered in "excess of jurisdiction." ' " (*Smith, supra*, 24 Cal.4th at p. 852.)  Because such sentences " 'could not lawfully be imposed under any circumstance in the particular case' [citation], they are reviewable 'regardless of whether an objection or argument was raised in the trial and/or reviewing court.' " (*Ibid.*)  "[A]ppellate intervention [is] appropriate in these cases because the errors present[] 'pure questions of law' " and are " ' "clear and correctable" independent of any factual issues presented by the record at sentencing.' [Citation.]  In other words, obvious legal errors at sentencing that are correctable without referring to factual findings in the record or remanding for further findings are not waivable." (*Ibid.*)

22

We agree with the Attorney General that the claimed error does not fall within this narrow exception to the waiver rule. Although Rafael characterizes our determination as whether the court properly interpreted the language of the statute, the question is whether the facts support the trial court's finding that Rafael used a vehicle during the commission of the offense. Unlike an incorrect calculation of mandatory restitution or custody credits, the court's determination that a vehicle was used by Rafael during the commission of the crime was not an "obvious legal error[] . . . correctable without referring to factual findings in the record . . . ." (*Smith, supra*, 24 Cal.4th at p. 853.) Because Rafael failed to object to the revocation of his driver's license in the trial court, the issue is waived.

## V

Ramirez argues he should "be allowed to withdraw his guilty plea, should he so desire, because he detrimentally relied upon the holding of [*People v.*] *Hofsheier* [(2006) 37 Cal.4th 1185 (*Hofsheier*), overruled by *Johnson v. Department of Justice* (2015) 60 Cal.4th 871 (*Johnson*),] in entering his no contest plea." Ramirez claims he entered the plea "contingent on the *possibility* that he might avoid . . . sex offender registration under" *Hofsheier*. (Italics added.) Ramirez's argument is without merit. There was no guarantee at the time Ramirez entered his plea agreement that he would not be required to register. As Ramirez acknowledged in the trial court and acknowledges here, the law at the time he entered his plea agreement permitted the court to require registration, in its discretion, if it determined the offense was committed "as a result of sexual compulsion or for purposes of sexual gratification." (§ 290.006.)

23

## A

As stated, after the jury was unable to reach a verdict on the charges against him, Ramirez entered a plea of no contest to the lesser charge of felony oral copulation with a minor (§ 288a, subdivision (b)(1)). Ramirez's plea declaration form included a notification that if he pleaded no contest he might "be required to register as a sex offender" and that the registration requirement was for his lifetime. The form also indicated Ramirez would be permitted to bring a motion under *Hofsheier*. Likewise, the minute order for the hearing noted Ramirez "may bring any motion it could have brought after trial and conviction on this count, including . . . [*Hofsheier*]" and that "the People will oppose."

Recognizing the registration requirement he faced at sentencing, Ramirez brought a motion seeking relief from registration as a sex offender. The motion noted *Hofsheier* held that mandatory registration for defendants convicted of voluntary copulation with a minor between the ages of 16 and 18 was a violation of the equal protection clause because registration was not mandatory for the similar offense of voluntary sexual intercourse with a minor. Ramirez asserted *Hofsheier's* holding was extended to individuals convicted of oral copulation of a minor between the ages of 14 and 16 by *People v. Hernandez* (2008) 166 Cal.App.4th 641. The motion also correctly recognized that even though mandatory registration was impermissible after *Hofsheier*, the court still maintained discretion to require registration under section 290.006. Ramirez argued the court should not require sex offender registration in his case because his conduct was normal teenage behavior and registration would have a detrimental impact on his life.

24

In response to Ramirez's motion, the district attorney asked the court to require registration in its discretion under section 290.006. In support of the request, the People pointed to the young age of Ramirez's victim, the conflicting evidence concerning whether Ramirez had forced himself on the victim, the emotional distress S. experienced after the event, the evidence that Ramirez acted in concert with his brothers and cousin, the fact that the victims were provided alcohol, and Ramirez's prior adjudication in juvenile court for a violent crime. At the sentencing hearing, Ramirez testified about the impact that registration would have on his future goals. The court concluded registration as a sex offender was appropriate, stating it found "the possibility is strong of future dangerousness or criminality . . . based on all the circumstances . . . ." At the district attorney's request, the court clarified that the registration was being ordered at the court's discretion under section 290.006.

B

"Section 290 requires anyone convicted of certain sex offenses to register for life as a sex offender." (*Hofsheier, supra*, 37 Cal.4th at p. 1196.) The Penal Code section and subdivision violations that result in mandatory registration under section 290 include oral copulation with a minor under section 288a. A person convicted of an offense not listed in section 290 may still be required to register if the court determines registration is warranted under section 290.006. Section 290.006 states: "Any person ordered by any court to register pursuant to the Act for any offense not included specifically in subdivision (c) of Section 290, shall so register, if the court finds at the time of conviction

25

or sentencing that the person committed the offense as a result of sexual compulsion or for purposes of sexual gratification." (§ 290.006.)

*Hofsheier* concluded that with respect to section 288a, subdivision (b)(1), section 290 violated the equal protection clause because there was no rational basis to require mandatory registration for oral copulation with a minor age 16 or 17 while allowing discretionary registration for unlawful intercourse with a minor of the same age (§ 261.5). (*Hofsheier, supra*, 37 Cal.4th at pp. 1206-1207.) At the time of Ramirez's sentencing hearing, therefore, a conviction of oral copulation with a minor did not result in mandatory sex offender registration. Rather, under *Hofsheier* a conviction under section 288a could result in sex offender registration under section 290.006 at the trial court's discretion.

After Ramirez filed his notice of appeal in this case, the California Supreme Court revisited the issue and expressly overruled *Hofsheier*. (*Johnson, supra,* 60 Cal.4th at p. 875.) The court concluded that "legislative concerns regarding teen pregnancy and the support of children conceived as a result of unlawful sexual intercourse provide more than just a plausible basis for allowing judicial discretion in assessing whether perpetrators of that crime should be required to register, while mandating registration for perpetrators of other nonforcible sex crimes." (*Ibid.*) As a result of *Johnson*, defendants convicted of a violation of section 288a again face mandatory sex offender registration, just as they did before the Supreme Court's decision in *Hofsheier*.

## C

We fail to see how *Johnson* impacts the registration order imposed on Ramirez in this case. Ramirez points to nothing in the record showing he pleaded no contest to a violation of section 288a, subdivision (b)(1) based on a promise that he would avoid registration. The parties litigated the appropriateness of registration under section 290.006 and the trial court concluded registration was warranted. Further, Ramirez has not challenged the trial court's finding under section 290.006. He asserts only that there was an "implicit promise" by the trial court that he would "be afforded the *possibility* of relief from mandatory sex offender registration under . . . section 290" and that if this court determines *Johnson* deprived him of that opportunity "equity demands that he be allowed to withdraw his guilty plea and proceed to trial, should he so desire." The record is clear that the trial court's registration order was discretionary and not based on the mandatory registration requirement that was invalid at the time Ramirez was sentenced. Ramirez has failed to provide any basis for reversal of that order.

27

DISPOSITION

The restitution order imposed against Rafael and Jose for J.'s relocation expenses is reversed and remanded for further proceedings consistent with this opinion. The judgments are otherwise affirmed.


MCCONNELL, P. J.

WE CONCUR:


MCDONALD, J.


AARON, J.